ROBERTS, J.,
Dissenting:
¶ 18. Because I conclude that it plainly appears from the face of the motion, all annexed exhibits, and prior proceedings that Haynes is not entitled to any relief, I find that the trial judge got it right when he summarily dismissed Haynes PCR petition without an evidentiary hearing. My learned colleagues conclude that Haynes’s alleged misunderstanding with his attorney concerning the correct interpretation of a “concurrent” sentence somehow vitiates the voluntariness of his plea. It is my position that unilateral misunderstanding by the defendant or his counsel about what date the defendant can reasonably be expected to be released from custody of the Department of Corrections cannot serve as grounds to withdraw a plea; especially when that expectation is objectively unreasonable, illegal, and patently ludicrous. Haynes got exactly the sentence he sought when he plea bargained with the prosecutor. I am compelled to dissent.
¶ 19. Just like the circuit court judge, we are charged with examining all exhibits attached to the pleadings. Fortunately, or maybe unfortunately for Haynes, he attached as an exhibit to his brief a copy of his time computation sheet from the Mississippi Department of Corrections (MDOC) — an official record maintained by the records office of the MDOC. The record does not reflect the exact circumstances of Haynes’s earlier arrest or convictions, but in any event, the time computation sheet indicates that on May 15, 1998, Haynes started serving time incident to two convictions. It is clear that the Pike County Circuit Court sentenced Haynes to one eight year sentence for selling cocaine and another eight year sentence for possession of cocaine. Additionally, the circuit court set the two eight year sentences to run concurrently with one another.
¶ 20. Apparently, Haynes was released on earned release supervision (ERS) on October 16, 2003. As best we can tell, Haynes escaped or absconded supervision from his ERS status on December 11, 2003. It also appears that Haynes was recaptured on January 18, 2004. Based on Haynes’s escape, his earned time release status was revoked. As a result, Haynes had to serve the remainder of his eight year sentence. That sentence was set to end on July 15, 2006.
¶ 21. Again, the record is not entirely clear, but it appears that Haynes committed another drug offense in Pike County while on ERS and before his recapture. The record does not contain an indictment or a criminal information. Regardless, it appears that Haynes originally waived arraignment and pled not guilty to that charge. Another document attached as an exhibit to Haynes’s brief titled as “Change of Plea and Sentence” makes it obvious that Haynes changed his mind and decided to plead guilty.
¶ 22. There is no dispute that, on August 16, 2004, Haynes pled guilty to “unlawful possession of at least one-tenth of a gram but less than two grams of cocaine with intent to distribute.” Haynes’s charge was enhanced due to his prior May of 1998 convictions. Therefore, when Haynes stood before Judge Smith on Au *127 gust 16, 2004, on the charge of possession of cocaine with intent to sell, he knew full well the following; he was a twice prior convicted felon who had been sentenced to and served more than one year in custody on each conviction, he was a prior controlled substance violator, he had been charged as a double enhanced sentence drug violator, his charge of possession with intent to sell occurred while he was in Pike County on ERS status, and that if convicted he could possibly receive a maximum sentence of sixty years in custody.
¶ 23. The circuit court sentenced Haynes to twenty-five years in the custody of the Mississippi Department of Corrections. The circuit court ordered that Haynes serve the first five years of that sentence and placed Haynes in post-release supervision for the remaining twenty years. Additionally, the circuit court noted that only the first five years of that post-release supervision would be on a reporting supervised basis, while the remaining fifteen years would be on a non-reporting, unsupervised basis. Finally, the circuit court noted that Haynes’s sentence would run concurrently with the remainder of Haynes’s sentence for his 1998 convictions. At that time, Haynes had approximately two years remaining on his 1998 sentences. That meant that Haynes’s 2004 sentence of five years would overlap the 1998 sentences by two years.
¶ 24. According to Haynes, he learned that he misunderstood the plea agreement once he returned to custody. To that end, on February 8, 2005, Haynes filed a motion to withdraw his guilty plea or correct his sentence. The motion was, in essence, a motion for post-conviction relief. Within that motion, Haynes claimed that he and his attorney were under the impression that, by running concurrently with the 1998 sentences, his five year sentence imposed in 2004 would terminate when the 1998 sentences terminated in 2006. According to Haynes, because his 2004 sentence did not terminate when the 1998 sentences terminated, the 2004 sentence ran consecutive to the 1998 sentences, rather than concurrent. Haynes requested that the circuit court either adjust his sentence to correspond to his understanding of the plea agreement or vacate his plea entirely. As mentioned, the circuit court dismissed Haynes’s motion without conducting an evidentiary hearing.
¶25. Haynes appeals and raises two specific issues. First, Haynes claims the circuit court erred when it overruled his motion to correct his sentence or withdraw his guilty plea. Haynes argues that he is actually serving his 2004 sentence consecutive to his 1998 sentences rather than concurrent because there is a two-year overlap. According to Haynes that overlap amounts to a breach of his plea agreement. Second, Haynes claimed the circuit court erred when it did not conduct an evidentia-ry hearing.
¶ 26. To be sure, there is no doubt that Haynes misunderstands the nature of his concurrent sentences. In Smith v. State, 853 So.2d 1277 (Miss.Ct.App.2003), a petitioner claimed that, because his Mississippi sentences ran concurrently with his Texas sentence, he was entitled to release from prison in Mississippi when he was paroled in Texas. Id. at (¶ 2). The Smith Court stated, “[w]hen two sentences run concurrently, it merely means that, for each day in custody while serving both sentences, the inmate receives credit toward each sentence. Concurrent sentences do not necessarily begin and end at the same time-they simply run together during the time that they overlap.” Id. at (¶ 6) (quoting Bullard v. Department of Corrections, 949 P.2d 999, 1002 (Colo.1997)). What is troubling is Haynes’s assertion that his *128 attorney, Thomas P. Welch, gave him the impression that his 2004 sentence would terminate upon the expiration of his 1998 sentences. The purported letter from Welch attached to Haynes’s brief corroborates Haynes’s assertion of a misunderstanding. Welch seemed to guarantee a result through post-conviction relief proceedings or otherwise. However, Haynes claims that he was never able to contact Welch afterwards. It is unclear why Haynes was unable to contact Welch, but the fact remains that there seems to be a misunderstanding.
¶ 27. It is at this point in the analysis that the majority and I disagree. The majority finds Haynes entitled to an evi-dentiary hearing based solely on the appearance of a misunderstanding. I would hold that more is necessary. In my opinion, it appears that Haynes clearly misunderstands the nature of a concurrent sentence, and possibly even that Welch misunderstood the plea agreement. Be that as it may, I am of the opinion that it plainly appears from the petition, the court’s files, and prior proceedings that Haynes is not entitled to relief. Accordingly, I would hold that the circuit court did not err when it dismissed Haynes’s petition for post-conviction relief without conducting an evidentiary hearing.
¶ 28. I find it appropriate to note just what Haynes argues. He does not argue that Welch rendered ineffective assistance of counsel, and for good reason. In all actuality, Haynes benefitted from Welch’s counsel, or at least the plea bargain that Welch negotiated, in that Haynes received an impermissible sentence. Haynes should have never received a concurrent sentence. According to section 99-19-21(2) of the Mississippi Code Annotated (Rev.2000):
When a person is sentenced to imprisonment for a felony committed while the person was on ... earned-release supervision, post-release supervision or suspended sentence, the imprisonment shall commence at the termination of the imprisonment for the preceding conviction. The term of imprisonment for a felony committed during parole, probation, earned-release supervision, post-release supervision or suspended sentence shall not run concurrently with any preceding term of imprisonment. If the person is not imprisoned in a penitentiary for the preceding conviction, he shall be placed immediately in the custody of the Department of Corrections to serve the term of imprisonment for the felony committed while on parole, probation, earned-release supervision, post-release supervision or suspended sentence.
(emphasis added). “Clearly, under Mississippi law, a convict sentenced for a crime committed while on probation is not eligible for a concurrent sentence for the second crime.” Johnson v. State, 909 So.2d 1149(¶ 7) (Miss.Ct.App.2005) (citing Coleman v. State, 772 So.2d 1101 (¶ 6) (Miss. Ct.App.2000)).
¶ 29. The basic undertone of Haynes’s argument is that he did not plead guilty knowingly or intelligently. Haynes claims he did not fully appreciate the overlapping quality of his concurrent sentence. According to Haynes, his second sentence should have ended when his previous sentence expired. In all actuality, Haynes claims he expected to receive a “free crime.”
¶ 30. My problem with Haynes’s assertion is two-fold. First, Haynes received the exact sentence that the prosecution agreed upon. The record contains no indication that the prosecution agreed that Haynes’s 2004 sentence would expire when his 1998 sentences expired. The agreement simply was that Haynes’s 2004 sen *129 tence would run concurrent with his 1998 sentences. It cannot be said that the circuit court breached the agreement that was put before it when it sentenced Haynes as it did.
¶ 81. Second, Haynes had multiple opportunities to make the sentencing court aware of his understanding of the concurrent nature of his 2004 sentence and did not. Had Haynes told the sentencing court that he pled guilty in exchange for a sentence that terminated when the 1998 sentences terminated, then I would be more likely to agree with the majority. That did not occur in this case. The exact opposite occurred. During Haynes’s guilty plea hearing, the circuit court asked Haynes, “[h]as anyone threatened, abused, or promised you anything to cause you to want to plead guilty?” Haynes told the circuit court, “No, sir.”
¶ 32. Haynes did not tell the circuit court that his attorney promised him that any sentence he received would terminate when his 1998 sentences terminated. Nor did Haynes claim that the prosecution promised him that his sentence would be coterminous with the 1998 sentences. In fact, Haynes has never claimed that the prosecution promised him such would occur.
¶ 33. “Great weight is given to statements made under oath and in open court during sentencing.” Sanchez v. State, 913 So.2d 1024(¶ 8) (Miss.Ct.App.2005). It is appropriate for a trial court to place great weight on statements made during guilty plea hearings, as “[t]here should be a strong presumption of validity of anyone’s statement under oath.” Id. In effect, Haynes swore to one thing before the circuit court, yet now swears to the opposite. Haynes swore that no one promised him anything in exchange for his guilty plea. However, he now claims that his attorney told him his 2004 sentence would terminate when his 1998 sentence expired.
¶ 34. Though this precise issue is one of first impression in Mississippi, it has arisen elsewhere. In a Missouri case, a petitioner sought to withdraw his guilty plea on the basis that it was involuntary because he believed his sentence would be concurrent with a previous sentence and that his first and second sentences would terminate at the same time. Daniels v. State, 454 S.W.2d 17, 18 (Mo.1970). As in the present case, the petitioner in Daniels claimed he had an understanding “not from the court” or prosecutors, but with his lawyer, that his sentences would end at the same time. That is, the petitioner claimed his lawyer assured him of that result.
¶ 35. The Missouri Supreme Court refused to allow the petitioner to withdraw his guilty plea. The Missouri court reasoned that, under the petitioner’s theory, the only punishment for the petitioner’s subsequent robberies, committed during a period of escape from prison, would be the mere formality of a record of two more convictions and no additional punishment. The Daniels court also found that the petitioner’s claim was belied by facts indicating that the petitioner was aware of the differences between concurrent and consecutive sentences.
¶ 36. Here, the circuit court informed Haynes that he would have to “serve the first [five years of his twenty-five year sentence] concurrent with [his then] present sentence.” Haynes had less than two years to serve on his 1998 sentences at that time. It defies logic to assume that one can serve five years in less than two years.
¶ 37. What is more, Haynes’s first sentences stemmed from two 1998 drug convictions. Haynes received earned-release supervision. Approximately six years la *130 ter, Haynes escaped or otherwise failed to report while on ERS. During his “escape,” Haynes committed another drug offense. That second offense, committed six years after the 1998 offenses, is in no way linked to his 1998 offenses. Accordingly, there was no reason to assume that the sentences merit co-termination.
¶ 38. In People v. Thompson, 29 Ill. App.3d 334, 330 N.E.2d 535, 536 (1975), a petitioner pled guilty to burglary. The sentencing court set the petitioner’s sentence to run concurrently to whatever sentence the Illinois parole board rendered incident to a related parole violation. As it turned out, the burglary sentence was longer than the parole board’s sentence for the parole violation. The petitioner claimed the trial court should have allowed the petitioner to withdraw his guilty plea because he did not understand the meaning of a concurrent sentence.
¶ 39. In Thompson, the petitioner even mentioned his understanding of the concurrent nature of the sentences during his guilty plea hearing. During a subsequent hearing, the petitioner’s attorney told the trial court that the petitioner was confused about the plea agreement. The petitioner’s attorney told the trial court that the petitioner thought he would get no more time for his second sentence than he would have on his first.
¶ 40. Notwithstanding the petitioner’s misconception, the Thompson court refused to allow the petitioner to withdraw his guilty plea. The Thompson court reasoned that the petitioner would not be permitted to withdraw his plea because (a) the trial court admonished the petitioner regarding the nature of the charge, his rights to a jury trial, and the consequences of his plea, (b) there was no indication that the petitioner had a defense to the burglary charge, (c) the petitioner did not argue that his misunderstanding of the term “concurrent” was apparent to the trial court when he pled guilty, (d) the record did not show that the trial court or the prosecutor attempted to mislead the petitioner or otherwise contributed to the petitioner’s misconception, (e) the petitioner’s lawyer stated, on the record and in the petitioner’s presence, that he explained the plea agreement to the petitioner, (f) the record showed a mutual manifestation of assent to be bound by the plea agreement, (g) the petitioner had ample opportunity to dispel any misconceptions, and (h) the petitioner twice asserted that he understood the conditions of the plea agreement.
¶ 41. The Thompson court stated that to allow the petitioner to withdraw would enable any petitioner to withdraw a guilty plea merely by claiming that he had a mistaken assumption about an inducing reason of a plea agreement to which he previously assented in open court. Further, the court held that where the record shows a mutual manifestation of assent, a petitioner’s subsequent claim of mutual mistake in assumption regarding an inducing reason for a guilty plea will not necessarily form a basis to vacate the plea.
¶ 42. In my opinion, the record plainly shows that, as far as the sentencing court could tell at the sentencing hearing, the prosecution and Haynes evinced a mutual manifestation of assent to be bound by the plea agreement as stated by the prosecution and accepted by Haynes. Haynes does not claim that the sentencing court should have been aware of his misunderstanding of the concurrent nature of his sentences. The record does not show that the prosecution or the sentencing court contributed to Haynes’s misunderstanding. It is possible that Haynes’s own attorney contributed to Haynes’s misunderstanding, but Haynes does not advance a claim of ineffective assistance of counsel.
*131 ¶43. Rather, Haynes wants to be released from custody or he wants to withdraw his guilty plea. It appears that Haynes is not aware just how beneficial his guilty plea was. He avoided a mandatory consecutive sentence. Even had he received five years to serve of a twenty-five year sentence, he would only have recently begun serving that sentence. What is more, Haynes avoided a possible sixty-year sentence as an enhanced drug offender. While this may be irrelevant as to whether Haynes received the plea agreement that he wanted, it is relevant to show that Haynes was not prejudiced by the plea agreement he received.
¶ 44. To order the circuit court to -conduct an evidentiary hearing based on these facts is, in my opinion, quite inappropriate. Obviously, the first approximately two years of Haynes’s five year sentence would run concurrent with the remaining two years he had left to serve on his first felonies. The final approximately three years would be served thereafter. The failure of Haynes’s logic regarding the nature of concurrent sentences is quite apparent. Assuming Haynes is correct, if he violates the conditions of his post-release supervision in 2009, does he seriously believe the circuit court could not revoke his suspended sentence and order it served because his two eight year sentences had already expired? His position simply defies logic. For Haynes, under these circumstances, to now claim that his understanding of his sentence was that he was going to get a “free” felony, a felony committed while on ERS, and be released from custody on the very same date as his 1998 felony sentences expired, is quite unreasonable and may even be better described as preposterous.
¶ 45. Considering the foregoing reasoning, I find that it is plainly obvious that Haynes is not entitled to relief. Accordingly, I would hold that the circuit court did not abuse its discretion when it dismissed Haynes’s petition for post-conviction relief. Because the majority finds that Haynes is entitled to an evidentiary hearing, I must respectfully dissent.
MYERS, P.J., AND GRIFFIS, J., JOIN THIS OPINION.